IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* SCOTT R. JOHNSTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:21CV273 |
| BANK OF AMERICA, N.A., | ) ) | |
| Defendant. | ) ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion to Dismiss Plaintiff-Relator Scott R. Johnston's ("Plaintiff-Relator") First Amended Complaint (the "FAC") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure by Defendant Bank of America, N.A. ("BOA"). (Docket Entry 33.) Plaintiff-Relator has filed a response and BOA has filed a reply. (Docket Entries 39, 40.) Also before the Court is BOA's Motion to Seal (Docket Entry 35) and the Local Rule 5.5 Report submitted by the parties (Docket Entry 38). For the reasons stated herein, the undersigned recommends that BOA's motion to dismiss be granted. Further, the undersigned will grant BOA's motion to seal and adopt the Local Rule 5.5 Report.

I. **BACKGROUND**

In April 2021, Plaintiff-Relator, a former BOA employee, commenced a *qui tam*[1] action by filing a Complaint to recover damages and civil penalties under the federal False Claims

---

[1] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vermont*

1

Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), against Bank of America Corporation arising from alleged false and fraudulent records, and false statements material to false and fraudulent claims made and presented by said entity to the United States Government under the Community Reinvestment Act of 1977 (the "CRA"). (*See* Compl. ¶ 1, Docket Entry 1.) After the Government declined to intervene (Docket Entry 12), Bank of America Corporation was served (Docket Entry 18) and filed a motion to dismiss the Complaint, asserting *inter alia* that Plaintiff-Relator sued the wrong defendant. (Docket Entry 21; *see also* Docket Entry 22 at 15-16.)[2] In response, Plaintiff-Relator filed the FAC naming BOA as the proper defendant (FAC, Docket Entry 35-1)[3] and BOA thereafter filed the pending motion to dismiss the FAC. (Docket Entry 33.)

In the FAC, Plaintiff-Relator maintains that BOA knowingly and intentionally presented or caused to be presented to an officer or employee of the United States Government, false or fraudulent claims for payment resulting in significant payments of false claims by the United States Government to BOA. (*See generally*, FAC, Docket Entry 35-1.) By way of background, the FAC first alleges that the CRA is designed to encourage banking

---

*Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000). Subject to certain limitations, including intervention by the United States, an individual may pursue a *qui tam* claim on behalf of the United States. *See* 31 U.S.C. § 3730.

[2] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[3] In the order herein, the undersigned will grant BOA's request to seal portions of the FAC and will order the Clerk to replace the copy of the FAC currently in the public record (Docket Entry 27) with the redacted FAC at Docket Entry 35-1. Therefore, for purposes of this Order and Recommendation, the undersigned refers to the redacted copy of the FAC that is attached to BOA's motion to seal (*see* FAC, Docket Enty 35-1.)

institutions to assist low-to-moderate income households, is overseen by three regulatory agencies—the Federal Deposit Insurance Corporation, the Federal Reserve Board and the Office of the Comptroller of the Currency, and requires such regulators to periodically evaluate bank records to determine the financial institution's performance on meeting the credit needs of low-to-moderate income households. (*Id.* ¶¶ 8-9.) The FAC further alleges that the Federal Home Loan Mortgage Corporation "Freddie Mac" and the Federal National Mortgage Association "Fannie Mae" both were created "to provide liquidity, stability and affordability to the mortgage market" and "by buying mortgages from lenders such as [BOA]," Freddie Mac and Fannie Mae do provide consistent liquidity. (*Id.* ¶¶ 11-12.)

On or about June 21, 2019, BOA launched the Down Payment Grant Program ("DPGP") which offers a grant equaling 3% of the home purchase price, up to $10,000, to be used for down payments on homes in select markets, and the grants do not require repayment. (*Id.* ¶ 10.) Plaintiff-Relator began working at BOA on or about April 1, 2019, first as a Financial Center Lending Officer and later as a Credit Solutions Adviser. (*Id.* ¶ 14.) During his employment, Plaintiff-Relator discovered that BOA "was misreporting the fact that [BOA] had provided financial assistance to the borrowers." (*Id.* ¶ 15.) For example, the FAC alleges that a misreporting occurred on or about September 30, 2019, related to one loan whereby borrowers applied and were approved for financial assistance under the DPGP program before September 30, 2019, although an Appraisal Report for the property reflected that no financial assistance was being received. (*Id.* ¶ 16.) Around that same time, Plaintiff-Relator then "reviewed additional loan files" being handled by an individual named Kevin Spillman,

3

"which further indicated that [BOA] was consistently misreporting on each and every loan[.]" (*Id.* ¶ 17.)

In August 2019, Plaintiff-Relator reported his findings to his direct manager, who initially took no action, and then told Plaintiff-Relator to notify Sherri Colter, the Sales Operations Manager. (*Id.* ¶¶ 18-19.) "Upon advising Ms. Colter of the fraudulent activity, the Plaintiff[-Relator] was advised 'If you value your job, you will choose a different path and not pursue the issue'; 'pleading ignorance is best' and 'we as a firm need to satisfy our CRA quota'." (*Id.* ¶ 20.) Thereafter, Plaintiff-Relator made reports to the Office of Comptroller and Currency and BOA's Ethics and Compliance Hotline, and ultimately filed a formal complaint after BOA restricted Plaintiff-Relator's server and file access. (*Id.* ¶¶ 21-22.) A few months later, Plaintiff-Relator sent email correspondence to BOA's Vice President of Employee Relations, Andrea Williams, who forwarded the communication to in-house counsel. (*Id.* ¶ 23.) While in-house counsel did contact Plaintiff-Relator some months later, in-house counsel refused to speak with Plaintiff-Relator about his observations of misreporting and there was no follow-up. (*Id.* ¶ 24.)

The FAC alleges two causes of action under the FCA. First, Plaintiff-Relator seeks relief against BOA under § 3729(a)(1)(A) of the FCA (Count I), asserting that "since the inception of [BOA's] DPGP, [BOA] has knowingly and intentionally presented or caused to be presented to an officer or employee of the Government, false or fraudulent claims . . . for payment or approval resulting in significant payments of false claims by the United States government to [BOA]." (*Id.* ¶ 35.) The FAC further alleges that "[e]ach time [BOA] misrepresented the financial assistance [it] had given to the borrowers through the DPGP,

4

[BOA] caused federal regulators and other economic actors such as state licensed appraiser[s] to rely on false data." (*Id.* ¶ 36.) As a result, "[t]hese misrepresentations allowed indeterminate financial actors and stakeholders to rely on false data from which to act upon, including assumptions about the creditworthiness of the DPGP grant recipients" and the misrepresentations "currently causes damage to the United States government and the economy as a whole." (*Id.* ¶¶ 37-38.) Further, "[e]ach time [BOA] completed the relevant appraisal report form pursuant to the Uniform Appraisal Dataset and made a misrepresentation that no financial assistance has been provided, [BOA] presented a false or fraudulent claim to the United States government." (*Id.* ¶ 39.) Relying on the same allegations, Plaintiff-Relator also seeks relief against BOA under § 3729(a)(1)(B) of the FCA (Count II). (*Id.* ¶¶ 40-47.)

## II. **DISCUSSION**

### A. BOA's Motion to Seal

BOA moves to seal portions of the FAC and portions of two exhibits filed in support of BOA's motion to dismiss. (Docket Entry 35.)[4] BOA states that the relief requested is necessary to protect confidential, non-public customer information and that the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, 6802, and 6809(4), prohibits disclosure of such information absent consent of its customers. (*Id.* at 1-3.) Plaintiff-Relator agrees to the proposed sealings. (*See* Docket Entry 38 at 3.) "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Comm'cns, Inc. v. Virginia*,

---

[4] The parties have also submitted a Local Rule 5.5 Report (Docket Entry 38) which the Court will adopt.

435 U.S. 829, 839 (1978). As a result, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." *Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589, 597 (1978). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). "[T]he common law presumption in favor of access attaches to all 'judicial records and documents,'" *Stone v. University of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (quoting *Nixon*, 435 U.S. at 597), but "the First Amendment guarantee of access has been extended only to particular judicial records and documents," *id.* (citing *Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (documents filed in connection with summary judgment motion in civil case)).

When a party makes a request to seal judicial records, "a district court must comply with certain substantive and procedural requirements." *Washington Post*, 386 F.3d at 576. Before granting a motion to seal, a court must first give the public notice and a reasonable opportunity to challenge the motion, "consider less drastic alternatives to sealing" and, if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. *Id.*[5] "As to the substance, the district court must first determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." *Id.* (internal quotations and alteration omitted). "The common law presumption of access may be overcome if competing interests outweigh the

---

[5] The undersigned notes that the motion to seal has been pending for quite some time giving the public a reasonable opportunity to challenge the request. No member of the public has filed anything related to this motion.

interest in access," *Stone*, 855 F.2d at 180 (citation omitted), but "[w]here the First Amendment guarantees access, . . . [such] access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest," *id.* (citation omitted). Here, the Court applies the First Amendment standard as the motion to seal has been filed in connection with BOA's motion to dismiss and relates to the FAC. *See HeiQ Materials AG v. ICP Indus., Inc.*, No. 1:22CV857, 2023 WL 4842783, at *2 (M.D.N.C. June 28, 2023) (unpublished) (applying First Amendment standard were defendant sought to file portions of amended complaint and amended answer under seal); *Kluttz v. North Carolina*, No. 1:20CV647, 2021 WL 4170429, at *3-4 (M.D.N.C. Sept. 14, 2021) (unpublished) (applying First Amendment standard to documents filed in connection to motion to dismiss), *appeal dismissed*, No. 21-7289, 2022 WL 986678 (4th Cir. Mar. 31, 2022) (unpublished).

In this case, the undersigned finds that BOA's interests in protecting its customers' information is compelling, and the request is narrowly tailored to serve that interest. To the parties' knowledge, BOA's customers referred to in paragraph 16 of the FAC have not consented to the release of their financial information into public court records. (*See* Docket Entry 38 at 3.) The redactions in the FAC and exhibits are necessary to protect confidential information belonging to third parties who are not involved in this action, and there are no less-drastic alternatives available for keeping this information confidential. Therefore, BOA's motion to seal will be granted to the extent that (1) the Clerk will be directed to replace the copy of the FAC currently in the public record (Docket Entry 27) with the redacted FAC at Docket Entry 35-1; and (2) the unredacted versions of the FAC and Exhibits A and D to

7

BOA's memorandum in support of its motion to dismiss (Docket Entries 36, 37-1, 37-4) will remain under seal.

B. BOA's Motion to Dismiss

BOA contends that the FAC fails to state a claim upon which relief can be granted and fails to meet the heightened pleading standard under Rule 9(b). (Docket Entry 34.) A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion, the "[C]ourt evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted). The Court may also consider "document[s] submitted [in support of a motion to dismiss] that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Finally, the Court "may properly take judicial notice of matters of public record" when ruling on a motion to dismiss. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Beyond the Rule 12(b)(6) facial plausibility standard, "Federal Rule of Civil Procedure 9's requirement that 'the circumstances constituting fraud' be stated 'with particularity' applies to FCA claims." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 186 (D. Md. 2019) (citing Fed. R. Civ. P. 9(b)). Therefore, at a minimum, Plaintiff-Relator must "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015) (internal quotations and citation omitted). "More precisely, the complaint must allege 'the who, what, when, where and how of the alleged fraud.'" *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). "Requiring such particularized pleading . . . 'prevent[s] frivolous suits, . . . eliminat[es] fraud actions in which all the facts are learned after discovery, and . . . protect[s] defendants from harm to their goodwill and reputation.'" *Id.* (ellipses and brackets in original) (quoting

9

*U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013)). Despite the "require[d] significant detail, '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts.'" *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999)).

Here, BOA seeks dismissal of the FAC pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure contending that: (1) the FAC fails to allege any claims were presented to the government for payment; (2) the FAC fails to allege a false statement or fraudulent course of action; (3) the FAC fails to allege that the omission of a DPGP grant from an appraisal rendered the remaining statements made in furtherance of each DPGP-connected application by BOA to Fannie Mae or Freddie Mac to purchase a loan materially misleading;[6] (4) the FAC fails to meet the materiality requirement; and (6) the FAC fails to allege facts to support the inference that BOA had the requisite scienter. (Docket Entry 34.) In response, Plaintiff-Relator concedes that some of BOA's contentions are correct such that Plaintiff-Relator has withdrawn Count I which seeks relief under § 3729(a)(1)(A). (*See* Docket Entry 39 at 12-13.) Thus, without further discussion, BOA's motion to dismiss regarding Count I of the FAC should be granted. However, the Court will address Count II, which seeks relief under § 3729(a)(1)(B), below.

---

[6] Plaintiff-Relator states that "no such omission forms the basis of the" FAC. (*See* Docket Entry 39 at 13.)

10

Relevant here, the FCA makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729 (a)(1)(B). "To plead an FCA claim, a relator must plausibly allege four distinct elements: '(1) [ ] there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter [knowledge]; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim').'" *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014) (alteration in original) (citation omitted). "To satisfy th[e] first element of an FCA claim, the statement or conduct alleged must represent an objective falsehood." *Wilson*, 525 F.3d at 376. Thus, "mere allegations of poor and inefficient management of contractual duties are not actionable under the FCA." *Id.* at 377 (internal quotations and alterations omitted). To satisfy the second element, a FCA complaint "'must set forth specific facts that support an inference of fraud.'" *Id.* at 379 (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003)). With regard to materiality, "[a] statement is material if it has a natural tendency to influence agency action or is capable of influencing agency action." *United States ex rel. Kelly-Creekbaum v. L'Academie De Cuisine, Inc.*, No. CV DKC 17-3525, 2019 WL 3817264, at *5 (D. Md. Aug. 14, 2019) (unpublished) (internal quotations and citation omitted).

Here, Plaintiff-Relator has failed to state a claim under § 3729(a)(1)(B). First, Plaintiff-Relator has not sufficiently alleged that a false claim was presented by BOA to an officer, employee or agent of the United States. *See United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) ("[A] central question in all FCA cases is whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the

11

government fisc.'") (citation omitted); *see also* 31 U.S.C. § 3729(b)(2)(A)(i) (FCA defining the term "claim" as "any request or demand, whether under a contract or otherwise, for money or property that—(i) is presented to an officer, employee, or agent of the United States[.]").[7] Indeed, by withdrawing Count I of the FAC, Plaintiff-Relator essentially concedes to that fact. (*See* Docket Entry 39 at 12-13.)[8] In his response brief, Plaintiff-Relator now contends that Count II is premised on § 3729(b)(2)(A)(ii), which defines a claim as a request or demand for money or property "made to a contractor, grantee, or other recipient," so long as the claimed money or property "is to be spent or used on the Government's behalf or to advance a Government program or interest," and the Government either (1) "provides . . . any portion of the money or property requested or demanded;" or (2) "will reimburse such contractor . . . or other recipient for any portion of the money or property which is requested or demanded." (*Id.*)

Plaintiff-Relator's argument is flawed for several reasons. First, Count II of the FAC directly invokes § 3729(b)(2)(A)(i) by alleging that "Defendant has knowingly and intentionally *presented or caused to be presented to an officer or employee of the Government*, false or fraudulent claims, records or other materials for payment or approval resulting in significant payments of false

---

[7] "[A]lthough subsection (a)(1)(B) does not require the defendant [it]self to have presented a false claim to the Government, 'a plaintiff asserting an FCA claim [under this subsection] is still required to show that a false claim was submitted to the government.'" *United States ex rel. Eastlick v. Odom*, 569 F. Supp. 3d 291, 297 (D.S.C. 2021) (citing *Grant*, 912 F.3d at 200).

[8] Relatedly, BOA argued that neither Fannie and Freddie Mac constitute the "Government" for purposes of the FCA and as such, Plaintiff-Relator claims fail. *See* Docket Entry 34 at 22 (citing *U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*, 813 F.3d 1259, 1260 (9th Cir. 2016); *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 579 (4th Cir. 2017).

12

claims by the United States government to the Defendant." (FAC ¶ 42 (emphasis added).) Plaintiff-Relator then further alleges "fraudulent representations by the Defendant to the United States government and federal regulators" (*id.* ¶ 45) and that "Defendant presented a false or fraudulent claim to the United States government" (*id.* ¶ 46), but nowhere does the FAC allege that Fannie Mae and Freddie Mac were "recipients" of the false claims submitted by BOA, (*see generally* FAC). To the extent Plaintiff-Relator attempts to asserts new allegations through his response brief (Docket Entry 39 at 13), it is well settled that he cannot amend his pleading in that fashion.[9] *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing . . . .").

Beyond failing to allege that Fannie Mae and Freddie Mac were "recipients" of the purported false claims submitted by BOA, Plaintiff-Relator's attempt to premise Count II on § 3729(b)(2)(A)(ii) fails because the FAC does not allege any other components of the subsection. Plaintiff-Relator does not allege that the Government provided any portion of money or property demanded from Fannie Mae and Freddie Mac by BOA or that the Government would reimburse Fannie Mae and Freddie Mac for any portion of money or property demanded by BOA. Again, this is fatal because "a payment by Freddie Mac and Fannie Mae does not automatically result in spending by the United States government." *United States ex rel. Brooks v. Wells Fargo Bank N.A.*, No. 17-CV-1237, 2019 WL 1125834, at *4 (N.D. Ill. Mar. 12, 2019) (unpublished). While "Fannie Mae and Freddie Mac m[ay have]

---

[9] This applies equally to any other newly asserted allegations Plaintiff-Relator attempts to set forth in the response brief. (*See* Docket Entry 39.)

13

qualif[ied] as 'recipient[s]' if [Plaintiff-Relator had] allege[d] with specificity facts sufficient to show that the [Government] provided some or all of the money that [BOA purportedly] 'request[ed]' or 'demand[ed]' from Fannie Mae and Freddie Mac[,]" *United States ex rel. Ashmore v. 1st Fin., Inc.*, No. 8:16-CV-1387-T-23JSS, 2018 WL 310032, at *2 (M.D. Fla. Jan. 5, 2018) (unpublished), Plaintiff-Relator fails to "connect the alleged fraud with specific money spent by the federal government" and his failure to do so "renders his allegations inadequate under Rule 12(b)(6) and especially Rule 9(b)." *Brooks*, 2019 WL 1125834, at *4.

Count II of the FAC also fails because Plaintiff-Relator does not sufficiently allege a false statement or fraudulent course of action. Here, the crux of Plaintiff-Relator's FCA claim rests on some unspecified number of appraisal reports associated with homes purchased by individuals receiving DPGP grants to which BOA failed to disclose to the Government. (*See generally* FAC.) The FAC alleges that an example of misreporting occurred around September 30, 2019. (*Id.* ¶ 16.) However, the FAC only references one specific Appraisal Report, one of which was not completed by BOA, but by an independent third party. (*See id.*; *see also* Docket Entry 34-4.)[10] The FAC does not allege that this Appraisal Report was false when it was completed. The Appraisal Report is dated September 13, 2019 (Docket Entry 34-4 at 7) and is based on a sales contract dated August 25, 2019 (*id.* at 1)—before the borrowers are alleged to have applied for a DPGP grant (around September 7, 2019), or even approved for one (prior to September 30, 2019). (*See* FAC ¶ 16.) As BOA points out, the Fannie Mae and Freddie Mac servicing guides provide that banks selling loans to entities such as Fannie Mae

---

[10] The Court considers this document as it was referenced in the FAC. (*See* FAC ¶ 16; *see also Chisholm v. Mountaire Farms of N. Carolina Corp.*, 629 F. Supp. 3d 368, 372 (M.D.N.C. 2022)).

and Freddie Mac are not required to provide the appraiser with an updated sales contract unless the updated terms "impact the physical description or condition of the property" or "affect the description of the property." (*See* Docket Entry 34-2 at 32; Docket Entry 34-3 at 14.)[11] Nor does Plaintiff-Relator allege that the purported omitted DPGP information was not disclosed through other required loan documents. For example, for every mortgage sold to Freddie Mac, the seller must include in the Uniform Loan Delivery Dataset information concerning down payment sources. (*See* Docket Entry 34-2 at 60-62.)

Plaintiff-Relator's pleading deficiencies, however, do not end there. The FAC also fails to meet the materiality requirement. To be actionable under the FCA, a misstatement or misrepresentation "must be material to the Government's payment decision." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). Materiality must be pled with particularity, *see id.* at 195 n.6, but "[e]ven without the heightened burden imposed by Rule 9(b), the [FCA's] materiality standard is a 'rigorous' and 'demanding' one." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 190 (4th Cir. 2022) (citation omitted). Plaintiff-Relator has not sufficiently identified any payment decision by the Government, much less one influenced by appraisal reports associated with DPGP recipients issued by BOA. Here, Plaintiff-Relator alleges that BOA "misrepresented the financial assistance the Defendant had given to the borrowers through the DPGP," thereby causing "federal regulators and other economic actors such as state licensed appraiser[s] to rely on false data." (FAC ¶ 43.) Plaintiff-Relator further

---

[11] The Court takes judicial notice of the guides, which govern the relationships between Fannie Mae, Freddie Mac and its servicers. *See e.g.*, *Berezovsky v. Moniz*, 869 F.3d 923, 933 n.9 (9th Cir. 2017) (taking judicial notice of Freddie Mac's servicing guide); *Ditech Fin. LLC v. Las Vegas Dev. Grp., LLC*, No. 316CV00351MMDCBC, 2019 WL 4168733, at *2 (D. Nev. Sept. 3, 2019) (unpublished) (taking judicial notice of Fannie Mae's servicing guide).

states that BOA's "misrepresentations allowed indeterminate financial actors and stakeholders to rely on false date from which to act upon, including assumptions about the creditworthiness of the DPGP grant recipients." (*Id.* ¶ 44.) Plaintiff-Relator's conclusory allegations, however, are insufficient as he provides no specific allegations of how BOA's purported appraisal report operations influenced any Government payment decision. To the extent Plaintiff-Relator argues that a loan sold to Freddie Mac or Fannie Mae with DPGP assistance is less desirable (*see* Docket Entry 39 at 14), the FAC fails to set forth specific allegations of how the appraisal reports impact the "creditworthiness of the DPGP grant recipients" (FAC ¶ 44) and ultimately how BOA's actions were material to any Government payment decision. *See* § 3729(b)(4) ("the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property"). As the Supreme Court has held, materiality "cannot be found where noncompliance is minor or insubstantial[,]" neither "is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Escobar*, 579 U.S. at 194. There are no allegations here, for example, that BOA "knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.* at 195. Rather, Plaintiff-Relator rests on unsubstantiated conclusory statements that fail to meet the materiality requirement.

For these reasons, BOA's motion to dismiss should be granted.[12] In his opposition brief, Plaintiff-Relator asks the Court for leave to amend to file a second amended complaint

---

[12] Lastly, BOA argues that Plaintiff-Relator fails to allege the requisite scienter. (Docket Entry 34 at 26-28.) "[A] person acts with the requisite scienter if they (1) have 'actual knowledge of the [falsity of the] information'; (2) act 'in deliberate ignorance of the truth or falsity of the information';

16

in the event the FAC is insufficient in whole or in part. (Docket Entry 39 at 15-17.) Plaintiff-Relator's request should be denied. Pursuant to Federal Rule of Civil Procedure 15(a)(2), following 21 days from service of a motion to dismiss, a party may amend a pleading only with consent of the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). Leave should be freely given "when justice so requires." *Id.* The Fourth Circuit has stated that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d 597, 603 (4th Cir. 2010).

Although leave may be freely granted, Federal Rule of Civil Procedure 7(b)(1) requires that a "request for a court order must be made by a motion" which states the grounds for seeking the order and the relief sought. In addition, the local rules of this Court require that leave to amend be requested in a separate motion and be accompanied by a proposed amended pleading. *See* M.D.N.C. L.R. 7.3(a), 15.1. "The purpose is to avoid having cases thrust into limbo on such generalized requests that may later prove unsupported." *Sullivan v. Lab'y Corp. of Am. Holdings*, No. 1:17CV193, 2018 WL 1586471, at *13 (M.D.N.C. Mar. 28, 2018) (unpublished).

---

or (3) act 'in reckless disregard of the truth or falsity of the information.'" *Taylor*, 39 F.4th at 197 (quoting 31 U.S.C. § 3729(b)(1)(A)). "[N]o proof of specific intent to defraud" is required to establish the requisite scienter. 31 U.S.C. § 3729(b)(1)(B). Here, Count II summarily asserts that BOA "knowingly and intentionally" engaged in fraudulent conduct, (FAC ¶ 42), without pointing to any specific factual allegations to support scienter. Even if Plaintiff-Relator relies upon the allegations that he reported his findings about the DPGP to his supervisors and BOA's ethics hotline (*see id.* ¶¶ 18-21), this presumes that such conduct by BOA regarding the misreporting was fraudulent, which the undersigned has already concluded that the allegations failed to state such.

17

In light of such, and as Plaintiff-Relator has done here, "a request for leave to amend conditioned on the court's ruling made at the end of a plaintiff's brief opposing a motion to dismiss is not a proper motion, and a district court may deny the request on this ground alone." *Id.*; *see also Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 546 F. Supp. 3d 440, 457 (M.D.N.C. 2021) (same). Plaintiff-Relator has not filed a motion to amend, nor has he attached a proposed second amended complaint. Therefore, his request to amend should be denied.

Further, the undersigned notes that Plaintiff-Relator has already amended his pleading once, though he still elected to include Count I in the FAC, and then subsequently withdrew it in response to BOA's arguments, which said arguments were similar in nature as set forth in the original motion to dismiss. (*See e.g.*, Docket Entry 22 at 18-21; Docket Entry 34 at 18-22.) Even now, Plaintiff-Relator has not explained how further amendment would cure the deficiencies noted herein. As such, the undersigned recommends dismissal of this action with prejudice. *See Cozzarelli v. Inspire Pharms., Inc.,* 549 F.3d 618, 630 (4th Cir. 2008) (holding that dismissal with prejudice was appropriate where "amendment would be futile in light of the [complaint's] fundamental deficiencies"); *Carlisle v. Daewon Kangup Co.*, No. 3:15-CV-565-CDL-CSC, 2018 WL 2336757, at *2 (M.D. Ala. May 23, 2018) (unpublished) (dismissing with prejudice FCA claims and denying relators' request for leave to file a second amended complaint, finding that "[r]elators did not file a proposed Second Amended Complaint or explain how more careful drafting would save their claims").

## III. CONCLUSION

For the reasons stated herein,

IT IS HEREBY ORDERED that the Local Rule 5.5 Report (Docket Entry 38) is ADOPTED. IT IS FURTHER ORDERED that Defendant Bank of America, N.A.'s Motion to Seal (Docket Entry 35) is GRANTED to the extent that (1) the Clerk is directed to replace the copy of the First Amended Complaint currently in the public record (*see* Docket Entry 27) with the redacted First Amended Complaint (*see* Docket Entry 35-1); and (2) the unredacted versions of the First Amended Complaint and Exhibits A and D to Bank of America, N.A.'s memorandum in support of its motion to dismiss (Docket Entries 36, 37-1, 37-4) shall remain under seal.

IT IS RECOMMENDED that Defendant Bank of America, N.A.'s Motion to Dismiss (Docket Entry 33) be GRANTED and Plaintiff-Relator Scott R. Johnston's First Amended Complaint be dismissed with prejudice.[13]

/s/  Joe L. Webster
United States Magistrate Judge

August 18, 2023
Durham, North Carolina

---

[13] The record reflects that although the Government declined to intervene in this action, it did raise the consent-for-dismissal provision of 31 U.S.C. § 3730(b)(1), requesting that if "either the relator or the defendant propose that this action be dismissed . . . or otherwise discontinued, this Court solicit the written consent of the United States before ruling or granting its approval." (Docket Entry 12 at 1.) In response, the Order of this Court instructed the Government to file its written consent, or lack thereof, within 14 days of service of a proposal by the relator or the defendant that this action be dismissed. (*See* Docket Entry 13 at 2.) The record does not reflect the Government's position on BOA's motion to dismiss. In any event, the recommendation herein is subject to a final ruling by the Court. *See* 28 U.S.C. § 636(b)(1).